UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., as Broadcast Licensee of the August 26, 2017 Mayweather vs. McGregor Match,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID GONZALEZ RUIZ, Individually, and as officer, director, shareholder and/or principal of COTIPAZ, INC. d/b/a/ COTIJAS TACO SHOP; and COTIPAZ, INC. d/b/a COTIJAS TACO SHOP,<br><br>    Defendants. | Case No.: 3:18-cv-01908-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

    The following matters are pending before the Court: 1) the Motion for Summary Judgment filed by Defendants Cotipaz, Inc. and David Gonzalez Ruiz (ECF No. 22); and 2) the Cross Motion for Summary Judgment filed by Plaintiff Joe Hand Promotions, Inc. (ECF No. 25).

## I. PROCEDURAL BACKGROUND

On August 16, 2018, Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") filed a Complaint against Defendants David Gonzalez Ruiz and Cotipaz, Inc. ("Cotipaz") (ECF No. 1). Plaintiff alleges that it was granted the exclusive rights of distribution and public performance in commercial establishments for the Mayweather vs. McGregor boxing match scheduled for August 26, 2017 ("the broadcast"). *Id.* at 3. Plaintiff alleges that Defendants willfully and unlawfully advertised, intercepted, and displayed the broadcast at Cotijas Taco Shop on August 26, 2017. *Id.* at 5, 8. Plaintiff alleges that Defendants never paid licensing fees, entered into an agreement, nor attained authorization from Plaintiff for the broadcast. *Id.* at 7, 12. Plaintiff brings claims for: (1) violation of 47 U.S.C. § 605(a) (unauthorized publication or use of communications); (2) violation of 47 U.S.C. § 553 (unauthorized reception of cable service); and (3) violation of 17 U.S.C. § 501(a) (copyright infringement). *Id.* at 10-11, 13.

On May 31, 2019, Defendants filed a Motion for Summary Judgment supported by a separate statement of undisputed material facts, declarations, requests for admissions, interrogatories, and a request for production of documents. (ECF No. 22). On June 7, 2019, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment (ECF No. 23) supported by a response to Defendant's separate statement of facts, Defendant's responses to Plaintiff's requests for admissions, requests for production of documents, and exhibits. (ECF No. 23). On June 7, 2019, Plaintiff filed an Affidavit. (ECF No. 24).

On June 7, 2019, Plaintiff filed a Cross Motion for Summary Judgment supported by a separate statement of undisputed material facts and Defendant's responses to Plaintiff's requests for admissions. (ECF No. 25). On July 9, 2019, Defendants filed a Response in Opposition to the Cross Motion for Summary Judgment (ECF No. 27).

On November 7, 2019, the Court heard oral argument on the Motion for Summary Judgment (ECF No. 22) and the Cross Motion for Summary Judgment (ECF No. 25). (ECF No. 30).

## II. FACTS

Cotijas Taco Shop ("the Taco Shop") is a restaurant located in San Diego, California (Ruiz Decl. ¶ 2, ECF No. 22-7 at 1) with an occupancy capacity of up to 50 patrons (Defs.' Resp. to Pl.'s Requests for Admissions, ECF No. 23-4 at 7). On August 26, 2017, Defendant Ruiz "owned the property" where the Taco Shop was located. *Id.* at 3. On July 16, 2018, Defendant Ruiz was listed as the "primary owner" and "licensee" of a liquor license for the business "Cotija Mex Grill." (ECF No. 23-3 at 1). The liquor license was originally issued on January 2, 2013 with an expiration date of December 31, 2018. *Id.*

On May 4, 2018, Defendant Ruiz was listed as the "President" of "Cotipaz, Inc." in a Statement of Information filed with the Secretary of State of the State of California (ECF No. 23-5 at 1). On August 26, 2017, Defendant Ruiz was the "officer/principal of Cotipaz, Inc." (Defs.' Resp. to Pl.'s Requests for Admissions, ECF No. 23-4 at 3). Cotipaz "is a business entity that operated a taco shop in Murrieta, Ca[lifornia]." (Ruiz Decl. ¶ 2, ECF No. 22-7 at 2). Defendant Ruiz and Israel Oseguera own Cotipaz. *Id.* Cotipaz has "no connection or affiliation with [the Taco Shop]." *Id.*

On August 26, 2017, the Taco Shop was open for commercial business and served food and alcohol. (Defs.' Resp. to Pl.'s Requests for Admissions, ECF No. 23-4 at 4, 6). On August 26, 2017, Defendant Ruiz "had the capability of receiving satellite television, broadband, fios, firestick or similar android services and/or WI-FI broadcasts." *Id.* at 5. On August 26, 2017, the Taco Shop "had the capability of receiving broadband, fios, firestick or similar android services, WI-FI and/or satellite television broadcasts on August 26, 2017." *Id.* Defendants were not authorized by, in agreement with, nor had authority from Plaintiff to exhibit the broadcast in the Taco Shop. *Id.* at 5-6. On August 26, 2017, between 8:30 p.m. and 8:27 p.m. one television set in the Taco Shop was streaming the last match of an undercard fight of the broadcast. (ECF No. 23-2 at 1).

On August 26, 2017, the Taco Shop was operating pursuant to a Commercial Lease Agreement ("CLA") between Defendant Ruiz and Tenant Enrique Hernandez. (Ex. A, ECF No. 22-9 at 2). The CLA was in effect from February 15, 2017 to December 1, 2017.

*Id*. The CLA provided that "Renter hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Renter" and that "Tenant shall have possession of the lease premises." *Id*. Pursuant to the CLA, Hernandez agreed to pay Defendant Ruiz $5,000 per month in rent and "pay all charges for . . . electricity, telephone, and other services and utilities used . . . during the term of [the CLA]." *Id*. Under the CLA, Defendant Ruiz retained the 'right to enter upon the Leased Premises at reasonable hours to inspect the same, provided [Defendant] Ruiz not thereby unreasonably interfere with Tenant's business on the Leased Premises." *Id*. The CLA stated "Tenant will comply with the rules of the Leased Premises adopted and altered by [Defendant] Ruiz from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by [Defendant] Ruiz to Tenant in writing." *Id*.

## III. SUMMARY JUDGMENT STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor. *See Anderson*, 477 U.S. at 256. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d

4

457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The nonmoving party's declaration or sworn testimony "is to be accepted as true…." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, "[i]f the affidavit stated only conclusions, and not 'such facts as would be admissible in evidence,' then it would be too conclusory to be cognizable…." *U.S. v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999) *citing* Fed. R. Civ. P. 56(e).

## IV. DISCUSSION

### a. Statutory Authorities

47 U.S.C. § 605 addresses unauthorized publication or use of wire or radio communications and states that

> (a) . . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .

47 U.S.C. § 605(a). 47 U.S.C. § 553 addresses unauthorized reception of cable service and states that

> (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law. . . .

47 U.S.C. § 553(a)(1). 17 U.S.C. § 501(a) addresses copyright infringement and states that

> (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) . . . is an infringer of the copyright or right of the author, as the case may be. . . .

17 U.S.C. § 501(a).

### b. Individual Liability

Defendant Ruiz asserts that on August 26, 2017, he was leasing the Taco Shop to Enrique Hernandez. (ECF No. 22 at 5). Defendant Ruiz contends that he cannot be held liable for the broadcast because he did not authorize any piracy, did not control the televisions, did not derive a financial benefit from the broadcast, and had no ability to supervise the broadcast. *Id*. Defendant asserts that he was not involved in the decision to exhibit the broadcast in the Taco Shop. *Id*. at 6. Defendant asserts that he instructed Hernandez not to put on such programming. *Id*. Defendant contends that he cannot be held liable because he did not operate the business during the broadcast. *Id*.

Plaintiff contends that there are genuine issues of material fact as to the relationship between Defendant Ruiz and tenant Hernandez as well as Defendant Ruiz's ownership responsibilities and involvement with the Taco Shop. (ECF No. 23 at 7). Plaintiff contends that Ruiz would be liable through respondeat superior because he had control over the Taco Shop's operation. *Id*. Plaintiff contends that Defendant Ruiz knew or should have known of Hernandez's intention to publicly exhibit the broadcast and took no action to prevent it. *Id*. at 8. Plaintiff contends that Defendant Ruiz was involved in the decision-making process to exhibit the broadcast, had an ownership and management stake in the Taco Shop, and derived a financial benefit from the operation of the Taco Shop on August 26, 2017. *Id*. at 11.

"Individual liability under the Cable Act requires that the individual authorize the underlying violations." *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC,* 648 F.Supp.2d 469, 473 (E.D. N.Y. 2009). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *Id.* (quoting *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.,* 118 F.3d 955, 971 (2d Cir.1997)).

Defendant Ruiz states in his declaration that on August 26, 2017, he was "not personally operating the business and it was actually leased to Enrique Hernandez." (Ruiz Decl. ¶ 2, ECF No. 22-7 at 1). Defendant Ruiz states that "[t]he lease term was from February 15, 2017 to December 1, 2017." *Id*. Defendant Ruiz states that, "[u]nder the terms of the lease agreement[,] Enrique Hernandez was paying a flat amount in rent and I was not sharing in the profits of the business." *Id*. Defendant Ruiz states that "according to the terms of the lease[,] Enrique Hernandez was to be responsible for paying utilities." *Id*. Defendant Ruiz states that he was "not personally present during the alleged exhibition." *Id*. ¶ 3. Defendant Ruiz states "[w]hen I leased the subject premises to Enrique Hernandez I instructed him to not put on any boxing programming on TV as I knew that could be problematic. . . . when the TV program was displayed it was done against my explicit instructions." *Id*.

Enrique Hernandez states in his declaration that on August 26, 2017, "[Defendant] Ruiz was not personally operating the business and it was actually leased to me." (Hernandez Decl. ¶ 2, ECF No. 22-8 at 1). Hernandez states that "[t]he lease term was from February 15, 2017 to December 1, 2017." *Id*. Hernandez states that, "[u]nder the terms of the lease agreement[,] I was paying a flat amount in rent and I was not sharing in the profits of the business." *Id*. Hernandez states that "according to the terms of the lease[,] I was to be responsible for paying utilities." *Id*. Hernandez states "I was personally present at the subject location during the exhibition of the TV program, although [Defendant] Ruiz was not there." *Id*. ¶ 4. Hernandez states "[w]hen I leased the subject premises I was told . . . to not put on any boxing programming on TV, but I decided to do so anyway because

I believed that by getting the signal from the internet and showing a fight program on a time delay would not be a problem." *Id.* ¶ 3.

Plaintiff has failed to identify any specific facts to dispute Defendant Ruiz's declaration that on August 26, 2017, he was not personally operating the Taco Shop. Plaintiff has failed to identify evidence to dispute the legitimacy of the CLA (ECF No. 22-9). There is no evidence in the record that Defendant Ruiz played any role in or authorized statutory violations. *See Joe Hand Promotions, Inc. v. Alvarado*, No. CV F 10–0907 LJO JLT, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011). The evidence in the record shows that Defendant Ruiz instructed Hernandez not to exhibit programming such as the broadcast. There is no evidence in the record that Defendant Ruiz derived a benefit from the broadcast.

The evidence in the record demonstrates that from January 2, 2013 to December 31, 2018, Defendant Ruiz was the "primary owner" and "licensee" of a liquor license for the business "Cotija Mex Grill." (ECF No. 23-3 at 1). "The owner of a liquor license has the responsibility to see to it that the license is not used in violation of law and as a matter of general law the knowledge and acts of the employee or agent are imputable to the licensee." *Munro v. Alcoholic Beverage etc. Control Appeals Board,* 181 Cal.App.2d 162, 164 (Dist. Ct. App. 1961). The Court concludes that Defendant Ruiz's name appearing on the liquor license is insufficient to subject him to liability under claims brought by Joe Hand. Evidence in the record shows that Hernandez was operating the Taco Shop and paying for utilities. There is no evidence that the liquor license was used to facilitate a violation of 47 U.S.C. § 605(a), 47 U.S.C. § 553, or 17 U.S.C. § 501(a). *See e.g., Alvarado*, 2011 WL at *7 (Defendants' "names appearing on the liquor license is insufficient to subject them to liability under Joe Hand's federal communications claims"); *Joe Hand Promotions, Inc. v. Santana*, 964 F.Supp.2d 1067, 1073 (N.D. Cal. 2013) ("simply being named on a liquor license is insufficient to subject the corporation to liability here"); *Joe Hand Promotions, Inc. v. McInnis,* No. 10–CV–01614–LHK, 2011 WL 1740109, at *10 (N.D. Cal. May 5, 2011) ("individual's status as a liquor licensee does not establish their liability under §§

8

605 and 553"); *see contra G&G Closed Circuit Events, LLC v. Flores*, No. 1:18-cv-001248-LJO-JLT, 2019 WL 3817601, at *4 (E.D. Cal. August 14, 2019) (a liquor license listing Defendants "is sufficient to create a dispute of fact as to whether [Defendants] had any ownership interest or control over [the establishment in question]").

### c. Corporate Liability

Defendant asserts that Cotipaz has "no connection with this particular location where the alleged exhibition took place." (ECF No. 22 at 4). Defendant asserts that he and Israel Oseguera owned Cotipaz. *Id*. at 7. Defendant asserts that Cotipaz is a business entity that operated a taco shop in Murrieta, California. *Id*.

Plaintiff disputes that Cotipaz is not affiliated with the Taco Shop. (Pl.'s Resp. to Defs.' Separate Statement of Facts ¶ 5, ECF No. 23-8 at 3). Plaintiff asserts that "California Secretary of State searches show David Ruiz as of August 26, 2017 as the sole officer of Cotipaz, Inc." (ECF No. 23 at 12). Plaintiff asserts that the description of Cotipaz is left blank in the Statement of Information (ECF No. 23-5). *Id*. Plaintiff asserts that there is no evidence in the record other than declarations to substantiate the claim that Defendant Cotipaz is not affiliated with the Taco Shop. *Id*.

Plaintiff offers no evidence in support of the allegation in its Complaint that Cotipaz is doing business as the Taco Shop. (ECF No. 1 at 4). Plaintiff offers no evidence in support of the allegation that Cotipaz's principal place of business and the Taco Shop are both located at the same address in San Diego. *Id*. at 5. Plaintiff asserts that Cotipaz is doing business as the Taco Shop and cites to Admissions No. 1 and 2 of Defendants' Responses to Plaintiff's Requests for Admissions (ECF No. 23-4). (ECF No. 23 at 7). However, neither of these Admissions establish a connection between Cotipaz and the Taco Shop. In Admission No. 1, Defendant Ruiz admits to being the "owner and liquor license holder for the premises known as [the Taco Shop] on the date of August 26, 2017." (Defs.' Resp. to Pl.'s Requests for Admissions, ECF No. 23-4 at 2). In Admission No. 2, Defendant Ruiz admits to being "the officer/principal of Cotipaz, Inc. on the date of August

26, 2017." *Id*. at 3. There is no evidence in the record establishing a connection between Cotipaz and the Taco Shop.

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendants Cotipaz, Inc. and David Gonzalez Ruiz is granted. (ECF No. 22)

IT IS FURTHER ORDERED that the Cross Motion for Summary Judgment filed by Plaintiff Joe Hand Promotions, Inc. is denied. (ECF No. 25).

The Clerk of the Court shall enter judgment for Defendants Cotipaz, Inc. and David Gonzalez Ruiz and against Plaintiff Joe Hand Promotions, Inc.

Dated: November 13, 2019

Hon. William Q. Hayes
United States District Court